IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID G. EBERSOLE | : | No. 4:06-CV-1368 |
| Plaintiff, | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

April 14, 2009

This matter is before the Court on the defendants' Motion for Summary Judgment (Doc. 71). For the reasons set forth below, the motion will be granted.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to

1

show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II. BACKGROUND

The gravamen of plaintiff David Ebersole's *pro se* complaint under 42 U.S.C. § 1982 is that officials of the Pennsylvania Department of Corrections ("DOC") retaliated against him for filing a civil suit against DOC officials. On October 21, 2001, Ebersole filed a civil rights action against numerous prison officials at SCI-Camp Hill asserting various constitutional violations. (Compl., Doc. 1, ¶ 29.) That action, docketed in this Court at *Ebersole v. Pennsylvania, et al.*, 3:01-CV-1924, principally involved Ebersole's allegations that prison officials retaliated against him for providing purported legal assistance to Diane Schall, a former DOC employee and eventually Ebersole's fiancee, in connection with DOC's investigation into the fraternization between Ebersole and Schall. Summary judgment was eventually entered in favor of all defendants in that action.

3

On December 19, 2005, after serving eight years in prison, Ebersole was transferred from SCI-Chester to a community corrections center, or halfway house, in Harrisburg, Pennsylvania. (Compl., Doc. 1, ¶¶ 30-31.) On March 29, 2006, Ebersole was transferred from the halfway house to SCI-Camp Hill where he was placed in the restricted housing unit ("RHU"). (*Id.* at ¶¶ 62-63; Def. Statement of Material Facts ["SMF"], Doc. 73, ¶ 6.)[1] Ebersole was questioned by defendants Allen Keck, David Orwig, Carolyn Mattis, and Terri Dewitt as part of the DOC Office of Professional Responsibility's investigation into Schall's personal and intimate relationship with Ebersole. (*See* Compl. ¶¶ 65-79; SMF ¶ 2.) Ebersole was then transferred to SCI-Mahanoy and again placed in the RHU. (Compl. ¶ 81.) Ebersole alleges that his transfer from the halfway house, his placement in the RHU, and the investigation into his relationship with Schall were in retaliation for his other civil rights suit. He also claims that his placement in the RHU was in violation of due process and the Eighth Amendment.

On April 4, 2006, Ebersole was issued a misconduct for a letter he wrote to Schall. (*Id.* at ¶ 90.) Ebersole attempted to conceal the letter by falsely labeling it

---

[1] Ebersole has not responded to the defendants' statement of material facts submitted in support of their motion for summary judgment, and therefore, pursuant to Local Rule 56.1, all material facts set forth therein are deemed admitted. *See Anchorage Assoc. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175-76 (3d Cir. 1990).

as legal mail and addressing it to "The Office of Dee & S. Riegle & B. Rothrock." (SMF ¶ 7.) The letter, in fact, was addressed to Schall and detailed what she should say to DOC investigators about her relationship with Ebersole. (*Id.* at ¶ 8.) After a hearing on the misconduct, the hearing examiner, defendant John Kane, sanctioned Ebersole with 60 days in the RHU. (*See id.* at ¶¶ 94-98.) Ebersole alleges that this misconduct was in retaliation for his civil suit against prison officials.

Ebersole further alleges that several DOC employees at SCI-Mahanoy, including Unit Manager Vuksta, "John Doe" Martin, Ms. Gennarini, and John/Jane Doe Inspectors in the mailroom denied him visitation, phone calls, and letters to his attorney in retaliation for his other suit. (*Id.* at ¶¶ 105-12.)

Ebersole also alleges that he was verbally harassed on two occasions. In January 2006, Ebersole attended depositions at SCI-Camp Hill, and alleges that he heard "several corrections officers" state that "someone needs to keep [Ebersole] quiet and should shoot him." (*Id.* at ¶ 29.) Ebersole also alleges that back at the halfway house, defendant A.J. Paine, a counselor at the community corrections center, "harassed" him by stating that should would cite him with a misconduct if he did not get employment. (*Id.* at ¶ 30.)

5

Finally, in a "supplemental" complaint, Ebersole alleges that defendant Bernadette Cotterman, a records specialist at SCI-Dallas, changed his release dates as part a conspiracy with other defendants to retaliate against him for filing the complaint in this action. (Doc. 26 ¶¶ 22-23.) Ebersole further alleges that defendants Diane Yale and Ralph Weiss, also SCI-Dallas employees, failed to correct this purported retaliation. (*Id.* at ¶¶ 40-41.) In fact, however, Ebersole's return to custody from the halfway house resulted in a recalculation of his release dates, and this recalculation included a prior sentence which had mistakenly been excluded from the original calculation. (SMF ¶¶ 10-11.)

## III. DISCUSSION

Ebersole did not file a memorandum in opposition to the defendants' motion for summary judgment, and therefore, pursuant to Local Rule 7.6, the motion is deemed unopposed. Nevertheless, in accordance with Fed. R. Civ. P. 56(e), the Court will determine based on the above facts whether the defendants are entitled to judgment as a matter of law. *See Anchorage Assoc.*, 922 F.2d at 175.

## A.     Defendants' Personal Involvement

Ebersole's complaints name 30 individual defendants, 27 of whom remain in this action.[2] The bulk of these defendants are entitled to summary judgment because Ebersole has failed to sufficiently establish their personal involvement in any alleged constitutional violation.

"An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Ebersole asserts specific actions taken by defendants Keck, Orwig, Mattis, Dewitt, Kaine, Vuksta, Martin, Gennarini, Paine, Cotterman, Yale and Weiss in connection with alleged constitutional violations. With regard to the other 15 individual defendants, however, Ebersole either proceeds on an impermissible theory of supervisory liability, invokes nothing more than general and conclusory allegations of a conspiracy, or simply fails to allege specific behavior that contributed to his harm. For this reason, each of these 15 defendants will be granted summary judgment.

---

[2] Ebersole claims against the DOC and defendants Curry, Harrell, and Starzynski were previously dismissed. (*See* Docs. 43, 56.)

## B. Retaliation Claim

Ebersole's principle claim is that the defendants retaliated against him for filing a civil suit against DOC officials by transferring him back into custody from the halfway house, placing him in the RHU, issuing misconducts, denying him contact with his attorney, and changing his release dates.

A prisoner plaintiff alleging retaliation must make three showings. First, the plaintiff must show that he was engaged in constitutionally protected conduct. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, the plaintiff must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.* Finally, there must be a causal link between the exercise of the prisoner's constitutional rights and the adverse action taken against the prisoner. *Id.* at 333-34. This third element uses a burden-shifting framework. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to retaliate against him. *Id.* A plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). Once the prisoner meets this burden, the

burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same action even in the absence of the protected activity. *Rauser*, 241 F.3d at 334.

In considering the third element, the court must take into account that the difficult task of prison administration is best left to prison officials who possess the necessary expertise. *Rauser*, 241 F.3d at 334 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Even if a prisoner can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, so long as a prison official can prove that absent the protected conduct he would have made the same decision for reasons reasonably related to a legitimate penological interest, he will prevail on a claim of retaliation. *Id.*

As to the first element of a retaliation claim, the defendants concede that Ebersole's filing a law suit is constitutionally protected conduct. As to the second element, it is clear that none of the allegedly retaliatory actions taken by the defendants deterred Ebersole from litigating his claims before this Court. Over seven-and-a-half years, Ebersole has more than actively prosecuted two cases through this Court, as demonstrated by the more than 550 docket entries between them. Given that Ebersole continued to actively exercise his constitutional rights in the face of the defendants' actions, it is difficult to see how he can meet the

second element of his retaliation claim. *See Keys v. Kramer*, 2006 WL 1670218, at *6 (M.D. Pa. June 6, 2006) ("Plaintiff continued to file grievances against prison staff with the prison, and he continued (up to the present time) to file civil rights actions with this Court. In fact, Plaintiff can hardly claim that he was deterred."); *Bartelli v. Bleich*, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005) ("Plaintiff's civil rights lawsuits and complaints against prison officials belie any assertion that defendant[]'s alleged threats affected Plaintiff's exercising his First Amendment Rights.").

Even assuming that the second element of a retaliation claim were satisfied, Ebersole has not met his burden as to the third element of his retaliation claim: showing that his constitutionally protected conduct was a substantial motivating factor for the defendants' actions. Other than conclusory allegations of a conspiracy, Ebersole puts forth no evidence demonstrating that the defendants' decisions were motivated by the filing of his first suit. Even if Ebersole had produced such evidence, the defendants have produced more than sufficient proof that the same actions would have been taken for legitimate penological reasons regardless of Ebersole's lawsuit. Ebersole was transferred from the halfway house, investigated, and placed in the RHU (where his visitation, phone calls, and mailing privileges were curtailed) as a result of the ongoing intimate relationship

between him and Schall, which violated Pennsylvania law and DOC ethics rules. (*See* SMF ¶¶ 3-4.) Ebersole was issued misconducts for his attempts to impede and obstruct the investigation into this relationship, and Ebersole's release dates were changed to correct an initial miscalculation. Because the defendants would have taken the same actions for reasons reasonably related to a legitimate penological interest, Ebersole's retaliation claim must fail.

C. **Due Process Claim**

Ebersole also claims that his transfer from the halfway house and assignment to the RHU violated due process. The first step in analyzing a procedural due process claim is to determine whether the interest asserted is protected by the Due Process Clause in that nature of the interest is within the contemplation of the "liberty or property" language of the Fourteenth Amendment. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If so, the question then becomes what process is due to protect it. *Id.*

In the prison context, protected liberty interests are limited to deprivations that impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). The determination of what is "atypical and significant" is based on the full range of conditions a prisoner may encounter, not simply the conditions in the general

11

population of the prison. *Griffin v. Vaughn*, 112 F.3d 703, 706 n.2 (3d Cir. 1997); *Shoats*, 213 F.3d at 144 (citing *Sandin*, 515 U.S. at 486). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

Rarely will confinement in administrative or punitive segregation be sufficient to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin*, 515 U.S. at 486). "[D]isciplinary detention and administrative segregation are the sorts of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and therefore do not implicate a liberty interest protected by the Due Process Clause. *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) (citations omitted). In this case, Ebersole's time in the RHU fall well short of the "atypical" deprivation that triggers the Due Process Clause. *Compare Sandin*, 515 U.S. at 486 (30 days in segregated confinement not atypical and did not implicate protected liberty interest); *Smith*, 293 F.3d at 645, 654 (7 months in disciplinary confinement did not implicate a liberty interest), *Torres*, 292 F.3d at 151-52 (disciplinary detention for 15 days and administrative segregation for 120 days was not atypical and did not implicate a protected liberty interest), and *Griffin*, 112 F.3d at 706-09 (administrative detention, which imposed

strict restrictions on outside contact and personal conveniences, did not implicate a protected liberty interest) *with Shoats*, 213 F.3d at 144 (8 *years* in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," implicated a protected liberty interest).

Ebersole's transfer also may not form the basis for a due process claim as an inmate does not have a constitutionally protected liberty interest in his place of confinement, his transfer, or his classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). The defendants are entitled to summary judgment on Ebersole's due process claim.

**D.     Eighth Amendment Claim**

In his shotgun complaint, Ebersole briefly alleges that his placement in the RHU violated the Eighth Amendment because he was denied typewriters, carpal tunnel braces, and back supports; because he received only one hour of outdoor exercise a day; and because he cannot participate in the kind of activities he could while in the halfway house.

13

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of basic human needs, *Helling v. McKinney*, 509 U.S. 25, 32, (1993), it does not mandate that prisons be free of discomfort. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir.1985); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 757 (3d Cir.1979).

To sustain an Eighth Amendment claim, an inmate must also show that the defendants acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The conditions of which Ebersole complains fall well short of the deprivations of basic human needs which trigger an Eighth Amendment violation. *See, e.g., Williams v. Campbell*, 2008 WL 2816089, at *7 (E.D. Pa. July 18, 2008) (stating "[c]ourts in this circuit have held that deprivation of exercise for a limited period of time without evidence of resulting harm to the plaintiff prisoner does not violate the Eighth Amendment" and collecting cases); *Georges v. Ricci*, 2007 WL 4292378, at *7 (D.N.J. Dec.4, 2007) (stating "loss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation and telephone privileges is no exception to this rule"; collecting cases); *Goldhaber v. Higgins*, 2007 WL 2907209, at *31 (W.D. Pa. Sept.28, 2007) (holding prison restrictions on work release program do not violate Eighth Amendment).

E.   **Verbal Harassment**

Finally, Ebersole claims that he was verbally harassed by several unnamed corrections officers at SCI-Camp Hill and defendant Paine at the halfway house. It is well-settled that "[v]erbal abuse of a prisoner by a prison official is insufficient to establish a violation of a federal right." *Potter v. Deputy Attorneys Under Abraham*, 304 Fed. Appx. 24, 27 (3d Cir. 2008). Therefore, any constitutional claim based on these mere words fails.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted and judgment entered in their favor. An appropriate order will be entered.